IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 7:12-CV-84-FL

| | |
|---|---|
| RASHAD FEWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' Motions for Judgment on the Pleadings. DE's-24 & 26. Plaintiff has responded to Defendant's motion (DE-28) and the motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation.

For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-24) be GRANTED, and that Defendant's Motion for Judgment on the Pleadings (DE-26) be DENIED. Specifically, it is RECOMMENDED that Defendant's final decision be vacated and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

**Statement of the Case**

Plaintiff filed concurrent applications for supplemental security income and disability insurance benefits on June 9, 2009, alleging disability beginning May 18, 2008. Tr. 83-84, 24. His claim was denied initially and upon reconsideration. *Id.* at 83-86. A hearing was held before

an Administrative Law Judge ("ALJ") who determined that Plaintiff was not disabled in a decision dated July 27, 2010. *Id*. at 24-34. The Social Security Administration's Office of Disability Adjudication and Review denied Plaintiff's request for review on February 7, 2012, rendering the ALJ's determination as Defendant's final decision. *Id.* at 2. Plaintiff filed the instant action in April, 2012. DEs-1, 6.

**<u>Standard of Review</u>**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive….

42 U.S.C. § 405(g). "Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

**SSA's Sequential Evaluation Process**

Title II of the Social Security Act provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability, as defined by the Act. 42 U.S.C. § 423(a)(1)(D). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. *Id.* § 1382(a). Both titles define "disability" as the "inability to engage in <u>any</u> substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." *Id.* §§ 423(d)(1)(A) & 1382c(a)(3)(A) (emphasis added). More specifically, an individual is considered disabled under the Act

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Accordingly, the Social Security Administration has promulgated the following regulations establishing a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b).[1] If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is

---

[1] The five step analysis applies to both supplemental security income and disability insurance benefits. *Compare* 20 C.F.R. Part 404 subpart P *with id.* Part 416 subpart I. For simplicity, only 20 C.F.R. Part 404, which governs disability insurance benefits, is cited herein.

3

> sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App. I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

*Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ followed the sequential evaluation in this case. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 18, 2008. Tr. 26. At step two, the ALJ found that Plaintiff had the following severe impairments: schizophrenia and anxiety. *Id*. The ALJ then determined that Plaintiff did not have an impairment that met or medically equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 27. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC")[2] to perform work at all exertional levels, with some non-exertional limitations. *Id*. at 28. Specifically, the ALJ found that Plaintiff could:

> Perform only simple, routine and repetitive tasks. He can work in an environment free of fast-paced production requirements, involving only simple work-related decisions and involving few, if any, work-place changes. Additionally, the claimant can have only occasional interaction with the public.

*Id.* The ALJ then found that Plaintiff was not able to perform past relevant work. *Id*. at 32. But based on the testimony of a vocational expert, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id*. at 33. Accordingly, the ALJ determined that Plaintiff had not been under a disability during the relevant time period. *Id*. at 34.

---

[2] An individual's RFC is what that person can still do despite physical and mental impairments. 20 C.F.R. § 404.1545(a).

**Medical Background**

In May 2008, Plaintiff was hospitalized at New Hanover Regional Medical Center following a psychotic break, and was admitted for inpatient treatment at The Oaks. Tr. 257-258, 275. Plaintiff exhibited a range of symptoms through early June: he was initially catatonic, and later attempted self-harm, reported auditory hallucinations, demonstrated religious preoccupations, and referred to everyone as "Jay." Tr. 275, 280-82. Plaintiff was discharged from The Oaks on June 13, 2008. Tr. 403. In his discharge summary, Dr. Stelmach concluded that Plaintiff met the criteria "for disability, Tr. 404; Dr. Pearce completed an additional discharge summary and assessed Plaintiff with a GAF of 50.[3] Tr. 406. Plaintiff thereafter began outpatient treatment for schizophrenia with Southeastern Center for Mental Health Services. Tr. 286, 336. He was assessed with a GAF of 58-60 both initially and upon re-evaluation on July 11, 2008. Tr. 285, 290.

In the wake of these events, Plaintiff's mother applied for, and was granted, guardianship of Plaintiff's person in North Carolina Superior Court in September 2008.[4] Tr. 302, 163-66. In

---

[3] The Global Assessment Functioning ("GAF") scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The scale ranges from 0 to 100, with serious impairment in functioning at a score below 50. AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2002) . The GAF score description has two components: symptom severity and level of functioning: "[I]n situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two." *Id.* at 32-33. A GAF of 41 to 50 indicates serious symptoms (e.g., suicidal ideation) or serious impairment in social functioning (e.g., no friends, unable to keep a job). *Id.* at 34. A GAF of 51 to 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

[4] N.C.G.S. § 35A-1101(7) defines an "incompetent adult" as 'an adult or emancipated minor who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property." *See In re PDR*, 737 S.E.2d 152, 158 (N.C. App. 2012); *cf.* Tr. 166 (distinguishing between rights reserved to the ward rather than the guardian). The undersigned has considered, but could locate no relevant authority regarding, whether the adjudication of incompetency constitutes "a decision by [an]other governmental agency about whether [a claimant] is disabled" that must be considered and discussed in the ALJ's decision. *See* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006); 20 C.F.R. § 404.1504. Because remand is recommended on other grounds, it is unnecessary to reach this issue.

support of this application, Dr. Jordan submitted an affidavit along with a recent psychological evaluation report. Tr. 297-301. Dr. Jordan opined that Plaintiff needed "guidance and direction" for independent living, employment, and financial responsibilities. Tr. 300. In particular, she believed that employment options "should be delayed at this time since he will have to gain more psychological and emotional stability before exploring employment opportunities." *Id.*

Plaintiff underwent a consultative examination with Dr. Silver on behalf of the North Carolina Disability Determination Services on February 10, 2009. Tr. 303-306. Dr. Silver concluded at that time that Plaintiff would be able to manage benefit payments but that "it is still too early to know whether he would be able to adjust to the world of work." Tr. 306. Plaintiff continued treatment with Southeastern Center through 2009. *See, e.g.*, Tr. 334. In June, records note that Plaintiff was compliant with his medications and had "no symptoms of psychosis." Tr. 330. July records report Plaintiff stating that he had not heard voices or experienced paranoia "lately," and conclude that Plaintiff was doing "very well." Tr. 332-33. In September 2009, however, Plaintiff reported that he "had an episode" and became nervous at his uncle's house when "a lot" of people were around, but that he "got through it." Tr. 398.

In 2010, Plaintiff's care was transitioned from Southeastern Center to River Valley Behavioral Health. Tr. 66; 375. His initial intake was completed by Ms. Granger, M.A., NCC, LPC, on February 19, 2010. Tr. 375. Plaintiff felt like he was doing well, but reported that he still "isolates and does not feel comfortable in large crowds." *Id.* Dr. Dietzgen completed his initial evaluation later in February 2010, and reported that Plaintiff said that he "sometimes-rarely" hears voices and that they "used to tell [him] to do stuff." Tr. 373. Plaintiff also mentioned that he wanted to go back to school. *Id.*; *see also* Tr. 385. Dr. Dietzgen additionally

6

observed that Plaintiff seemed bored and disinterested. Tr. 373. In April and May 2010, Plaintiff reported doing well, without psychotic symptoms. Tr. 370-71.

Dr. Dietzgen submitted a letter on Plaintiff's behalf in July 2010, opining that (1) Plaintiff's schizophrenia "has caused marked restriction of daily activities and social functioning," (2) while Plaintiff's symptoms had abated thanks to his medication, Dr. Dietzgen believed that "a minimal increase of mental demands or change in environment would be predicted to cause him to decompensate," and (3) Plaintiff "could not be expected to tolerate the stress of any work or to interact appropriately with co-workers or supervisors." Tr. 400-402. In addition, Dr. Dietzgen provided a second letter reiterating his prior position that a change in environment would be likely to cause Plaintiff to decompensate, stressing that individuals who suffer from schizophrenia are "fragile" and "very vulnerable to decompensation." Tr. 239. Dr. Dietzgen opined that, while he had no way to predict whether the ALJ's limitations would prevent decompensation, "placing [Plaintiff] in competitive employment at this time is contraindicated. . . . At best, [he] is going to require a very supportive work environment." Tr. 240.

The additional records provided by Dr. Dietzgen underscore his concern regarding Plaintiff's response to changes. For example, the March 2011 records indicate that Plaintiff's mother brought him in for treatment early because she believed he was "isolating from family, believes he must keep eyes open, avoids eye contact." Tr. 242. Plaintiff's brother had moved in, which caused him increased stress. *Id.* In April 2011, Plaintiff's treatment plan was rewritten, and he mentioned an increase in auditory hallucinations and "negative things" they were saying to him. Tr. 243. Dr. Dietzgen's May 2011 treatment notes mention that Plaintiff has an

7

"occasional bad day" when he gets "anxious and [has] 'bad thoughts.'" Tr. 244. As a result, Plaintiff was prescribed extra medication. *Id.*

At his hearing, Plaintiff testified that he still sometimes hears voices, but that the voices now are more likely to be "positive" voices than negative ones. Tr. 49. He is uncomfortable being around many people at once and will try to isolate himself. Tr. 47. If he feels an "episode" coming on, he has difficulty concentrating and "the only thing [he] can really think of is getting away." Tr. 50. Plaintiff explained that an episode is when he has an urgency and is anxious or depressed and talks to himself in front of people and "just tr[ies] to get away." *Id.* Though he had not experienced an episode in a "while," Plaintiff spent most of his time by himself and sometimes with family so he hadn't "put himself in that position." Tr. 51.

## ANALYSIS

Plaintiff raises three central objections to the ALJ's assessment of the evidence, leading with the argument that substantial evidence does not support the weight given to certain medical providers. DE-25 at 9-12. Because remand is recommended for fact-finder consideration of the new evidence submitted to the Appeals Council, the undersigned declines to address Plaintiff's other assignments of error in full. *See Powell v. Astrue*, No 5:09-cv-290, 2010 WL 3075526, at *4 (E.D.N.C. Jul. 16, 2010) (declining to address other arguments when recommending remand based on ALJ's failure to provide adequate analysis of treating physician's opinion), *adopted by* 2010 WL 3075522 (E.D.N.C. Aug. 5, 2010).

### I. **Remand Is Warranted For Full Consideration Of The Evidence Incorporated Into The Record By The Appeals Council.**

Following the ALJ's denial, Plaintiff submitted additional evidence to the Appeals Council, as is permitted by 20 C.F.R. § 404.970(b). As mentioned above, this evidence consisted of a letter and supporting documentation from Dr. Dietzgen explaining that his continued treatment

of Plaintiff reinforced his earlier opinion that Plaintiff was "very vulnerable to decompensation." Tr. 239-244. The Appeals Council considered this additional evidence, but denied Plaintiff's request for review, stating that the evidence "does not provide a basis for changing the [ALJ's] decision." Tr. 2. The Appeals Council then incorporated Dr. Dietzgen's letter and attached treatment notes into the administrative record. Tr. 5.

### A. The Appeals Council properly considered the new evidence submitted by Plaintiff.

The Appeals Council is permitted to consider and incorporate additional evidence "only where it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). Here, the Appeals Council plainly judged that the evidence submitted by Plaintiff related to Plaintiff's condition on or before the ALJ hearing decision, even though the letter and treatment records post-dated the decision.[5] *See Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 n.7 (11th Cir. 2011) (relying upon Appeals Council determination that evidence related to pertinent time period). This judgment was not in error.

The Fourth Circuit "has recognized that a treating physician may properly offer a retrospective opinion on the past extent of an impairment." *Wilkins v. Sec. of Dept. of Health & Hmn. Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991) (citing *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987)). The crux of Dr. Dietzgen's initial opinion was that Plaintiff's condition, while stable with medication in a comfortable home environment, was vulnerable to decompensation. Tr. 401. Unlike a traditional injury that may simply deteriorate with time, schizophrenia may manifest intermittently. *Lebus v. Harris*, 526 F. Supp. 56, 61 (N.D. Cal. 1981) ("[W]hile the

---

[5] Had the Appeals Council not believed that the evidence related to the period on or before the ALJ's hearing decision, it would have been required to "return the additional evidence . . . with an explanation as to why it did not accept the additional evidence and [to] advise [the claimant] of [his or her] right to file a new application." 20 C.F.R. § 404.976. It did not provide this notification here. In addition, when the Appeals Council rejects and returns evidence, if a new application is filed within six months of the Appeals Council's notice, it will be considered to have been "filed" as of the date the claimant sought review from the Appeals Council. *Id.*

9

mere existence of symptom-free periods may negate a finding of disability when a physical ailment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of the claim.").

The SSA has recognized this reality, by both ruling and regulation. Ruling 85-15, discussing mental impairments generally, provides that:

> Individuals with mental disorders often adopt a highly restricted and/or inflexible lifestyle within which they appear to function well. Good mental health services and care may enable chronic patients to function adequately in the community by lowering psychological pressures, by medication, and by support from services such as outpatient facilities, day-care programs, social work programs and similar assistance.

*Id.*, 1985 WL 56857, at *6. The Listings[6] incorporate this principle:

> Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors such as placement in a hospital, halfway house, board and care facility, or other environment that provides similar structure. Highly structured and supportive settings may also be found in your home. Such settings may greatly reduce the mental demands placed on you. <u>With lowered mental demands, overt symptoms and signs of the underlying mental disorder may be minimized. At the same time, however, your ability to function outside of such a structured or supportive setting may not have changed. If your symptomatology is controlled or attenuated by psychosocial factors, we must consider your ability to function outside of such highly structured settings</u>.[7]

---

[6] The "Listing of Impairments" details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments meet all the criteria of a particular listing, 20 C.F.R. § 416.925(c)(3), or are medically equivalent to a listing, *Id.* § 416.926, this alone establishes that the claimant is disabled. *Id.* § 416.920(d).

[7] It is noted that the ALJ failed to provide explanation or cite any evidence regarding the "C" criteria, despite Dr. Dietzgen's opinion that Plaintiff met the second of these criteria. *See* Tr. 401 (Dietzgen opinion paralleling 12.03C(2)); *Green v. Astrue*, No. 1:10-1840, 2011 WL 1770262, at *15 (D.S.C. May 9, 2011) (remanding because ALJ paragraph C analysis was "lacking"; record contained opinions regarding whether Plaintiff satisfied those requirements but ALJ failed to mention them or discuss anything other than summary conclusion that C criteria were not met).

20 C.F.R. Part 404, subpart P, App. I, § 12.00F (emphasis added). Thus, in the case of schizophrenia, a claimant who does not satisfy the A and B requirements of Listing 12.03 may still meet the listing by virtue of the paragraph C factors. A claimant with a documented history of schizophrenic or psychotic disorder will meet paragraph C of the listing even if his "symptoms or signs [are] currently attenuated by medication or psychosocial support," if he has one of the following:

> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.* § 12.03C; *see also Green v. Astrue*, No. 1:10-1840, 2011 WL 1770262, at *15 (D.S.C. May 9, 2011) ("[I]n evaluating opinion evidence concerning Listing 12.03C, the ALJ must remain mindful that a part of that Listing criteria recognizes that mental conditions such as schizophrenia may have periods of latency.").

Thus, unlike most impairments—which are not disabling if they can be controlled by medication—schizophrenia is "not quite that simple." *Pagan v. Bowen*, 862 F.2d 340, 350 (D.C. Cir. 1988). Rather, in the case of schizophrenia, even if a claimant is experiencing stability with medication, *cf.* Tr. 32, the ALJ should consider "the length of time spent in remission, the severity of the remission-period symptoms, and the likelihood, frequency and severity of relapses into severe psychotic behavior." *Pagan*, 862 F.2d at 351. In this context, the new evidence submitted to the Appeals Council relates to Plaintiff's condition at the time of the ALJ's decision and provides important insight into the likelihood of future decompensation.

For instance, minor changes in Plaintiff's environment—i.e., his living structure—caused his symptoms to increase, as Dr. Dietzgen predicted in his first letter. Tr. 401, 242. In addition, Dr. Dietzgen's second letter and the subsequent records further explain the inconsistency, seized upon by the ALJ, between records noting that Plaintiff was "doing well" and Dr. Dietzgen's concerns regarding decompensation. *See Daniels v. Astrue*, 5:06-cv-320-BO, Order (DE-25) (E.D.N.C. Aug. 17, 2007) (finding that additional letters submitted by medical sources to the Appeals Council "account for the seeming contradiction between [a doctor's] initial diagnosis, and the bleak conclusions he ultimately expressed"), *motion to alter or amend judgment denied*, 564 F. Supp. 2d 536, 537 (E.D.N.C. 2008). In sum, due to the nature of Plaintiff's impairment, the Appeals Council's decision that the new evidence related to the period of time on or before the ALJ's decision was not in error.

### B. Based on the Entire Record, Remand is Warranted For Full Consideration of Dr. Dietzgen's Opinions.

When the Appeals Council has evaluated evidence and accepted it into the administrative record, this Court must consider the entire record, including the materials not before the ALJ, to determine whether substantial evidence supports the Commissioner's decision to deny benefits. *Wilkins*, 953 F.2d at 96 (court must review record as a whole, including evidence incorporated by Appeals Council, in determining whether substantial evidence supports the Commissioner's findings); *accord Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011). The reviewing court may affirm or reverse the decision of the Commissioner based on all the evidence in the record, including the new evidence, or the court may remand for rehearing pursuant to sentence four of 42 U.S.C. § 405(g). *Meyer*, 662 F.3d at 707 (remanding for further proceedings where

evidence from treating physician corroborated opinion that ALJ rejected and conflicted with evidence that ALJ credited).

Here, as previewed above, the new evidence could affect the ALJ's conclusions, including his rejection of both Dr. Dietzgen's and Dr. Jordan's opinions. *See Wilson-Coleman v. Colvin*, No. 1:11-cv-726, 2013 WL 6018780, *5-7 (M.D.N.C. Nov. 12, 2013) (commenting that remand was warranted where new evidence "offer[ed] an explanation" resolving credibility concerns and helped fill "at least part of an evidentiary gap in the record"). The ALJ concluded that Dr. Dietzgen's predictions of inability to handle workplace stress were contradicted by "relatively normal" recent treatment records, and found that Dr. Jordan's opinion was entitled to "little weight" because Plaintiff's symptoms improved with treatment.[8] Tr. 31-32. The ALJ's analysis thus fails to account for the unique nature of schizophrenia. As the new evidence highlights, relatively normal treatment records do not necessarily contradict a medical source opinion that a claimant is unable to manage changes such as the stressors involved in work. Accordingly, substantial evidence does not support the Commissioner's decision to deny benefits, and the ALJ's RFC assessment and his consideration of the medical source opinions must be reevaluated in light of the new evidence. *See Schilling v. Colvin*, 7:11-cv-176-FL, 2013 WL 1246772, at *7 (E.D.N.C. Mar. 26, 2013) (remand warranted where new evidence "detracts from the ALJ's analysis"); *McGee v. Bowen*, 647 F. Supp. 1238, 1252 (N.D. Ill. 1986) (discussing claimant's period of remission and commenting that it "must be weighed in light of

---

[8] The ALJ gave "some weight" to Dr. Dietzgen's opinion that "a minimal increase of mental demands or change in environment may cause the claimant to decompensate." Tr. 32. He thus limited Plaintiff to only simple, routine and repetitive tasks, free of fast-paced production requirements, involving only simple decisions and few workplace changes, along with only "occasional" interaction with the public. *Id.* at 28, 32. The ALJ did not incorporate any limitation reflecting Dr. Dietzgen's opinion regarding Plaintiff's ability to interact appropriately with coworkers and supervisors, however. *See id.* Remand could have been warranted on this basis. *Cf. Regans v. Colvin*, 2013 WL 1844516, at *4-5 (Mar. 28, 2013) (remanding where ALJ improperly weighed treating psychiatrist's opinion where ALJ failed to address specific aspects of doctor's opinion).

the whole record, including the fact that both before and after [that period] she deteriorated to the extent that she was hospitalized, including the testimony of her family as to her condition throughout the period, and <u>including the expert opinion on the likelihood of recurrence of symptoms at any time</u>") (emphasis added).

Accordingly, remand is warranted to allow all evidence in the record to be weighed by a fact finder and reconciled with other relevant evidence. *See Meyer*, 662 F.3d at 707. Plaintiff's impairment, in light of the new evidence, "must be assessed according to whether [his] symptoms . . . coupled with the likelihood of recurrence of [psychotic] episodes, realistically permit [him] to function in the workplace." *Pagan*, 862 F.2d at 351; *see also Melvin v. Colvin*, No. 1:09-cv-174, 2013 WL 6240437 (M.D.N.C. Dec. 3, 2013) (remanding where statement by treating therapist was before Appeals Council but not ALJ and "bears upon" claimant's allegations of disabling mental impairments).

## **CONCLUSION**

Accordingly, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-24) be GRANTED, and that Defendant's Motion for Judgment on the Pleadings (DE-26) be DENIED. Specifically, it is RECOMMENDED that Defendant's final decision be vacated and remanded pursuant to sentence four of 42 U.S. C. § 405(g) for further proceedings consistent with the foregoing directives.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Friday, January 24, 2014.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE